**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JERRY GUSTIN, ELDA GARCIA,**
**and WESLEY WELLING,**

        **Plaintiffs,**

**-vs-**                                            **Case No. 6:08-cv-57-Orl-31DAB**

**PAUL A. HOFFMAN and EDWARD S.**
**DIGGES, JR.,**

        **Defendant.**

_____

## ORDER

This cause came before the Court upon consideration of Plaintiffs' Motion for Class Certification (Doc. 72), Defendants' responses in opposition thereto (Doc. 85 and 89), Defendants' Motion for Leave to Supplement the Record (Doc. 94) and Plaintiffs' response in opposition thereto (Doc. 95).

**I. Background**

In their Third Amended Complaint, Plaintiffs allege that the Defendants, Paul Hoffman ("Hoffman") and Edward Digges ("Digges"), violated Section 10(b) of the 1934 Securities and Exchange Act (the "1934 Act") and Rule 10b-5[1] by, *inter alia*, knowingly making false statements

---

[1] *See* 15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5, respectively.

of material fact or omissions which Plaintiffs relied upon in making substantial investments in entities controlled by the Defendants.[2]

The basis for this putative class action is also the subject of three other actions which have come before the Court.[3] Indeed, the Defendants' entities were placed into receivership by the Securities and Exchange Commission on February 2, 2006, and a receiver, James D. Silver, was appointed by the Court on February 15, 2006, to marshal the assets of the Defendants' entities and distribute same to the investors. In the last two years, the Receiver has brought separate actions against Digges and Hoffman. *See Silver v. Digges, et al.*, Case No. 6:06-cv-290-Orl-31DJK; *Silver v. Hoffman*, Case No. 6:07-cv-1670-Orl031DAB. Both of these cases resulted in settlements favorable to the investors. The Plaintiffs filed the instant tag-along action against Digges and Hoffman on January 14, 2008.

The common thread throughout these cases is that between April 2003 and February 2006, the Defendants, or the entities they allegedly controlled, engaged in a fraudulent scheme which raised more than $20 million from approximately 300 investors. Specifically, the Defendants' entities offered investments in point-of-sale debit and credit card terminals. While investors were ostensibly given the opportunity to purchase the terminals outright, all of the investors appear to have entered into lease-back agreements with one or more of the Defendants' entities. Once an investor 'purchased' one or more terminals and entered into the lease-back agreement, the

---

[2]*See* 15 U.S.C. 78t (providing for joint and several liability for individuals exercising control over others who are liable for certain securities violations).

[3]*SEC v. Digges, et al.*, Case No. 6:06-cv-137-Orl31DAB; *Silver v. Digges, et al.*, Case No. 6:06-cv-290-Orl-31DJK; and *Silver v. Hoffman*, Case No. 6:07-cv-1670-Orl031DAB.

Defendants' entities were supposed to place the terminals at retail establishments. Investors were promised a monthly return of $50 for each terminal they owned, or a twelve percent (12%) annual return over a five (5) year period. These monthly returns were to be paid out of the transactions fees earned by the terminals. The investors, however, had no control over the leased terminals and the transaction fees were sent to the Defendants' entities which, in turn, were supposed to make the $50 monthly lease payments to each investor. After the five year lease period, the Defendants' entities were obligated to repurchase the terminals from the investors at the original purchase price.

In the instant action, Plaintiffs allege that the Defendants made a number of misrepresentations[4] to the investors in connection with the foregoing investments. These misrepresentations include the fact that the monthly lease payments were guaranteed by a six-month reserve fund and that the Defendants' entities maintained a sinking fund to pay for the eventual repurchase of the terminals after the five (5) year lease period. According to Plaintiffs, there were no such reserve or sinking funds. Many, if not most, of the terminals were never placed with merchants and even those that were did not generate sufficient funds to make the lease payments. Instead, the Defendants' entities allegedly used recent investors' purchases to pay the monthly lease payments due to previous investors – a characteristic common to pyramid or Ponzi schemes. Eventually, the Defendants' entities stopped making the monthly payments. When

---

[4] It is unclear, however, from the Third Amended Complaint exactly which representations were oral or written, the date of each representation, who made each representation, and to whom each representation was made.

investors started making demands for their lease payments or for the repurchase of their terminals, the scheme unraveled.

## II. Analysis

Class actions predicated on violations of Section 10(b) of the 1934 Act and Rule 10b-5 are subject to the Private Securities and Litigation Reform Act (the "PSLRA"), codified at 15 U.S.C. § 78u-4 and 78u-5. *See*, *e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007). In addition to its heightened pleading requirements, the PSLRA requires that each plaintiff seeking to serve as a representative in a class action must provide the Court with a personally sworn certificate which: (1) states that the plaintiff has reviewed the complaint and authorized its filing; (2) states that the plaintiff did not purchase the security that is at issue in the litigation at the direction of plaintiff's counsel; (3) states that the plaintiff is willing to serve as a class representative; (4) sets forth all the plaintiff's transactions in the security that is at issue in the ligation for the period specified in the complaint; (5) identifies any other securities class actions filed in the previous three years in which the plaintiff sought to serve as a class representative; and (6) states that the plaintiff will not accept any payment for serving as a class representative other than his or her own pro rata share of any recovery, except as may be ordered or approved by the Court. 15 U.S.C. § 78u-4(a)(2)(A). Furthermore, each putative class representative's sworn certificate must be filed with the Court contemporaneously with the filing of a complaint. *Id*.

Notwithstanding the fact that the Third Amended Complaint is currently in its fourth rendition, as of October 20, 2008, not one of the putative class representatives identified in any

version of the Complaint ever filed the required sworn certificate with the Court.[5]  As 15 U.S.C. § 78u-4(a)(2) makes clear, the required sworn certificate must be filed contemporaneously with the complaint – not some ten months after the filing of a complaint.  Furthermore, at least one putative class representative never even saw *any* version of the complaint before it was filed with the Court (Doc. 94, Ex. A).  While Plaintiffs' designated lead counsel has apparently never been appointed lead counsel in any securities class action, he and the putative class representatives are not excused from complying with the basic strictures of the PSLRA.

In addition to Plaintiffs' failure to comply with the PSLRA, the Court has serious concerns regarding the lack of pre-certification discovery conducted in this case.  While the Court's initial scheduling order did not establish separate discovery deadlines for class certification and the merits, additional discovery concerning class certification appears to be necessary.

In light of these critical procedural deficiencies and lack of discovery, Plaintiffs' Motion for Class Certification is clearly premature and will accordingly be denied.  The Court will also dismiss the Third Amended Complaint so as to give Plaintiffs one final opportunity to prepare a complaint which complies with not only 15 U.S.C. § 78u-4(a)(2)(A), but also the PSLRA's heightened pleading requirements.

**III. Conclusion**

Based on the foregoing, it is **ORDERED** that Plaintiffs' Motion for Class Certification (Doc. 72) is **DENIED** without prejudice.  Defendants' Motion for Leave to Supplement the

---

[5] On October 24, 2008, nearly ten months after the filing of the initial Complaint, *one* putative class representative filed the required sworn certificate (Doc. 96).

Record (Doc. 94) is **DENIED** as **MOOT**. Plaintiffs' Third Amended Complaint (Doc. 75) is **DISMISSED** *sua sponte* for failure to comply with the PSLRA.

Plaintiffs shall have one final opportunity to file an amended complaint which has been reviewed, authorized, and is accompanied by sworn certificates from each putative class representative. Plaintiffs' amended complaint must comply with all other requirements imposed by the PSLRA, including the PSLRA's heightened pleading requirements.

The parties will have 120 days from the entry of this Order in which to conduct additional discovery regarding the propriety of class certification. Plaintiffs' amended complaint shall be filed with the Court by Friday, December 5, 2008. If applicable, Plaintiffs' new motion for class certification shall be due on Friday, February 27, 2009. Defendants' response in opposition will be due on Friday, March 20, 2009.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 28, 2008.

Copies furnished to:

Counsel of Record  
Unrepresented Party

GREGORY A. PRESNELL  
UNITED STATES DISTRICT JUDGE