**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JERRY GUSTIN, ELDA GARCIA,
and WESLEY WELLING,**

           **Plaintiffs,**

**-vs-**                                                  **Case No. 6:08-cv-57-Orl-31DAB**

**PAUL A. HOFFMAN and EDWARD S.
DIGGES, JR.,**

           **Defendant.**
_____

# ORDER

This matter came before the Court without oral argument upon consideration of Defendants', Paul A. Hoffman and Edward S. Digges, Jr.,[1] Motions to Dismiss Fourth Amended Complaint (Docs. 100 and 103), Plaintiffs', Jerry Gustin, Elda Garcia and Wesley Welling ("Plaintiffs"), response in opposition thereto (Doc. 106), and Defendant's, Paul A. Hoffman, reply (Doc. 115).

**I. Overview**

Plaintiffs' Fourth Amended Complaint alleges that the Defendants violated Section 10(b) of the 1934 Securities and Exchange Act (the "1934 Act") and Rule 10b-5[2] by exercising control

---

[1] Unless otherwise noted, Defendants Digges and Hoffman are referred to collectively as "Defendants" herein.

[2] *See* 15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5, respectively.

over entities that Defendants knew were making false statements of material fact in order to lure investors into a Ponzi scheme.[3]

As previously noted by the Court (*see* Doc. 97), the basis for this putative class action is also the subject of three other actions which have come before the Court.[4] Indeed, the Defendants' entities were placed into receivership by the Securities and Exchange Commission (the "SEC") on February 2, 2006, and a receiver, James D. Silver, was appointed by the Court on February 15, 2006, to marshal the assets of the Defendants' entities and distribute same to the investors. In the last two years, the Receiver has also brought separate actions against Digges and Hoffman. *See Silver v. Digges, et al.*, Case No. 6:06-cv-290-Orl-31DJK; *Silver v. Hoffman*, Case No. 6:07-cv-1670-Orl031DAB. Both of these cases resulted in settlements favorable to the investors, *id.*, and the primary SEC action recently resulted in a distribution of more than one million dollars to the investors. *SEC v. Digges, et al.*, Case No. 6:06-cv-137-Orl31DAB (*see* Docs. 212 and 215). Plaintiffs filed the instant tag-along action against Digges and Hoffman approximately two years after the SEC brought its initial action.

The common thread throughout all these cases is that between April 2003 and February 2006, the Defendants, or the entities they allegedly controlled, engaged in a fraudulent scheme which raised more than $20 million from approximately 300 investors. Specifically, the Defendants' entities offered investments in point-of-sale debit and credit card terminals. While

---

[3]*See* 15 U.S.C. § 78t (providing for joint and several liability for individuals exercising control over others who are liable for certain securities violations).

[4]*SEC v. Digges, et al.*, Case No. 6:06-cv-137-Orl31DAB; *Silver v. Digges, et al.*, Case No. 6:06-cv-290-Orl-31DJK; and *Silver v. Hoffman*, Case No. 6:07-cv-1670-Orl031DAB.

investors were ostensibly given the opportunity to purchase the terminals outright, all of the investors apparently entered into lease-back agreements with one or more of the Defendants' entities. Once an investor 'purchased' one or more terminals and entered into the lease-back agreement, the Defendants' entities were supposed to place the terminals at retail establishments. Investors were promised a monthly return of $50 for each terminal they owned, amounting to a twelve percent (12%) annual return over a five (5) year period. These monthly returns were to be paid out of the transactions fees earned by the terminals. The investors, however, had no control over the terminals and the transaction fees were sent to the Defendants' entities which, in turn, were supposed to make the $50 monthly lease payments to each investor. After the lease period, the Defendants' entities were obligated to repurchase the terminals from the investors at the original purchase price.

In the case at bar, Plaintiffs allege that the Defendants' entities made a number of misrepresentations to the investors in connection with the foregoing investments. These misrepresentations include the fact that the monthly lease payments were guaranteed by a six-month reserve fund and that the Defendants' entities maintained a sinking fund to pay for the eventual repurchase of the terminals after the lease period. According to Plaintiffs, there were no such reserve or sinking funds. Furthermore, many of the terminals were never placed with merchants and even those that were did not generate sufficient funds to make the lease payments. Instead, the Defendants' entities allegedly used recent investors' purchases to pay the monthly lease payments due to previous investors – the classic hallmark of a pyramid or Ponzi scheme. Eventually, the Defendants' entities stopped making the monthly payments. When investors

started making demands for their lease payments or for the repurchase of their terminals, the scheme unraveled.

## II. Procedural History

Plaintiffs filed their initial Complaint on January 14, 2008 (Doc. 1). In response to Defendants' Motions to Dismiss the Complaint (Docs. 20 and 25), Plaintiffs filed a Motion to File an Amended Complaint (Doc. 44). The Court granted leave to amend and Plaintiffs filed their First Amended Complaint on June 6, 2008 (Doc. 49). The Court then granted Plaintiffs' Motion to Add Wesley Welling as a named Plaintiff (Doc. 52) and Plaintiffs filed their Second Amended Complaint (Doc. 54). The Court then granted Defendant Hoffman's Motion to Dismiss the Second Amended Complaint (Doc. 56), finding that, in light of the SEC and Receiver's separate actions against the same Defendants, Plaintiffs' suit was duplicative and filed merely as a placeholder in the event the other actions were unsuccessful (Doc. 69 at 3 – 5). In attempt to assert claims which were independent of the SEC and Receiver's actions, Plaintiffs filed a Third Amended Complaint (Doc. 75) and sought class certification (Doc. 72). Upon review of Defendants' response in opposition to the Motion for Class Certification and Defendants' Motion to Dismiss the Third Amended Complaint, the Court denied Plaintiffs' Motion for Class Certification and dismissed the Third Amended Complaint *sua sponte* (Doc. 97).

In dismissing the Third Amended Complaint, the Court observed that class actions predicated on violations of Section 10(b) of the 1934 Act and Rule 10b-5 are subject to the Private Securities and Litigation Reform Act (the "PSLRA"), codified at 15 U.S.C. § 78u-4 and 78u-5; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499 (2007) (discussing the PSLRA and establishing appropriate standard of review for Section 10(b) actions). The Court

further noted that, in addition to its heightened pleading requirements, the PSLRA requires each plaintiff seeking to serve as a representative in a class action to provide the Court with a personally sworn certificate stating, *inter alia*, that he has reviewed and complaint and authorized its filing. 15 U.S.C. § 78u-4(a)(2)(A). Because not one of the potential class representatives identified in any version of the Complaint had ever filed the required sworn certificate, the Court dismissed the Third Amended Complaint for failure to comply with the PSLRA (Doc. 97). The dismissal, however, was without prejudice "so as to give Plaintiffs one final opportunity to prepare a complaint which complies with not only 15 U.S.C. § 78u-4(a)(2)(A), but also the PSLRA's heightened pleading requirements" (Doc. 97 at 5).

Defendants now move to dismiss the Fourth Amended Complaint for, *inter alia*, failing to adequately allege that Defendants were control persons within the meaning of 15 U.S.C. § 78t and failing to comply with the heightened pleading requirements of the PSLRA.[5] The Court addresses these concerns, *infra*.

## III. Standard of Review

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see*, *e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor.

---

[5] Defendants also contend that allegations in the Fourth Amended Complaint are contradicted by the sworn testimony of the putative class representatives and that Plaintiff Garcia's claim is time barred. Neither argument, however, is appropriate at the this stage of the proceedings.

*Jenkins v. McKeithen*, 395 U.S. 411,421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). And a plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 1965.

With respect to actions predicated on violations of Section 10(b) of the 1934 Securities and Exchange Act, courts "must consider the complaint in its entirety...when ruling on Rule 12(b)(6) motions to dismiss . . . ." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007). However,

> Under the PSLRA's heightened pleading instructions, any private securities complaint alleging that the defendant made a false or misleading statement must: (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1); and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," § 78u-4(b)(2).

*Id*. at 2508.

As the U.S. Supreme Court has noted, the "strong inference" standard "unequivocally raise[d] the bar for pleading scienter." *Id*. at 2509. Accordingly, while all of the facts alleged in the complaint must be considered collectively and not scrutinized in isolation, the complaint as a whole must give rise to a strong inference of scienter. *Id*. In determining whether the pleaded facts give rise to a "strong" – *i.e.*, a powerful or cogent – inference of scienter, the court must take into account plausible opposing inferences. *Id*. Thus, a complaint will survive a motion to

dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 2510; *see also Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1235 (11th Cir. 2008).

## IV. Analysis

### A. Control Person Liability

To state a claim for control person liability, a plaintiff must allege facts that establish: (1) a primary violation of the securities law by a controlled person; (2) that the person had the power to control the general business affairs of the controlled person; and (3) that the person "had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability." *Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001) (citations and quotations omitted).

Defendant Hoffman contends that "the examples of specific conduct set forth in the complaint...all relate to actions by others, not Mr. Hoffman"[6] (Doc. 100 at 16) and that Plaintiffs have failed to sufficiently allege Mr. Hoffman's control of the Defendants' entities. Hoffman further contends that it was Defendant Digges who actually controlled the Defendants' entities. For his part, Defendant Digges simply incorporates Defendant Hoffman's arguments without explanation and without attempting to differentiating his own role as a control person (Doc. 103 at 1).

---

[6] This argument clearly evinces a fundamental misunderstanding of the law. The whole point of control person liability is that persons under the control of a defendant committed the primary violations of the securities law and that the defendant had the power to control the primary violator's actions.

Upon review, the Court finds that Plaintiffs have alleged control person liability as to both Defendants. Plaintiffs have clearly alleged a primary violation by marketing persons and other agents who were under the control of the Defendants' entities. Similarly, Plaintiffs have alleged that both Defendants, who were 50% co-owners of Defendants' entities, had the power to control the general business affairs of these marketers and agents and that both Defendants had the power to directly or indirectly control the corporate policies that resulted in the primary violations.

**B. Scienter Under the PSLRA**

Defendants argue that the Fourth Amended Complaint fails to satisfy the PSLRA's heightened pleading requirements with respect to scienter (Docs. 100 at 24 and 103 at 3). In addition to the fact that the complaint fails to allege that Defendant Hoffman never made any statements whatsoever to Plaintiffs,[7] both Defendants contend that Plaintiffs have provided no factual allegations indicating an intent to deceive or defraud. Accordingly, Defendants contend that Plaintiffs have failed to provide sufficient allegations which would tend to support a "strong inference" that either Defendant acted with the requisite scienter (Docs. 100 at 25 and 103 at 3).

Plaintiffs respond by contending that Defendant Hoffman's "scienter is not only explicitly alleged again and again in the Complaint, it is practically beyond dispute in light of the facts of this case" (Doc. 106 at 18). With specific reference to various paragraphs of the Fourth Amended Complaint and reliance on *United States v. Edwards*, 526 F.3d 747, 760-61 (11th Cir. 2008),[8]

---

[7]As noted, *supra*, Plaintiffs need not allege that either Defendant ever made any material false statement to Plaintiffs – only that persons under the control of Defendants made such statements.

[8]The *Edwards* case, however, was a criminal action involving a Defendant who was convicted of wire fraud and other crimes. 526 F.3d 747, 748 (11th Cir. 2008). In short, this case had nothing whatsoever to do with the PSLRA. Accordingly, Plaintiffs' reliance on *Edwards* is misplaced.

Plaintiffs argue that when an alleged control person under 15 U.S.C. § 78t operates a Ponzi scheme, he necessarily does so with scienter (Doc. 106 at 19).

Upon review of the entire Fourth Amended Complaint, the Court finds that Plaintiffs have clearly alleged facts that would support a strong inference of scienter. Plaintiffs have alleged that both Defendants were aware that their companies "began operating at a deficit at or near their inception in November 2002, and the deficit widened as time progressed" (Doc. 98 at 21). With respect to Defendant Hoffman, in particular, Plaintiffs allege that Hoffman had an intent to deceive because he knew that Defendant Digges "was convicted of and had served time in jail for fraud" (Doc. 98, ¶ 65). Plaintiffs also allege that Defendant Hoffman knew that his companies could not deliver on the promises they made to their investors (Doc. 98, ¶ 66); that two of his companies had been cited by the Pennsylvania and Maryland authorities for violating those States' securities laws and yet continued to offer the same investment opportunity in Florida and other States (Doc. 98, ¶¶ 67 and 84); and that Hoffman had suggested deepening the fraudulent conduct at a management conference "by using an already underfunded investor reserve fund" to fund a new business enterprise (Doc. 98, ¶ 70).[9]

The foregoing allegations, as well as the remaining allegations in the Fourth Amended Complaint, support a strong showing of scienter. While some of these allegations may be

---

[9]While FED. R. CIV. P. (8)(e) permits Plaintiffs to plead in the alternative with respect to separate counts, Plaintiffs' Fourth Amended Complaint contains only one count. Furthermore, allegations of fraud must still be pled with particularity under FED. R. CIV. P. 9(b) notwithstanding FED. R. CIV. P. 8(e); *see Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277-78 (11th Cir. 2006). Accordingly, Plaintiffs' allegation that Defendant Hoffman wanted to use a reserve fund, which Plaintiffs also allege did not exist and which Plaintiffs allege was one of Defendants' crucial misrepresentations, is a non-sequitur. Notwithstanding this obvious inconsistency, however, Plaintiffs have still made a strong showing of scienter.

susceptible to competing inferences (such as Hoffman's small loan to one of Defendants' entities), the overall inference drawn from the Fourth Amended Complaint is that Hoffman clearly acted with an intent to deceive. Similarly, with respect to Defendant Digges, the Fourth Amended Complaint contains sufficient allegations supporting a finding of scienter.[10] Contrary to Defendant Digges' contention, the Court finds that these allegations satisfy the heightened pleading requirements of the PSLRA and FED. R. CIV. P. 9(b).

**IV. Conclusion**

Based on the foregoing, it is **ORDERED** that Defendants', Paul A. Hoffman and Edward S. Digges, Jr., Motions to Dismiss Fourth Amended Complaint (Docs. 100 and 103) are **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 9, 2009.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

---

[10] In light of the SEC and Receiver's actions, the case for Defendant Digges' scienter is perhaps even more compelling. *See also*, *e.g.*, Plaintiffs' Fourth Amended Complaint (Doc. 98, ¶ 14 (noting that Digges used one of the Defendants' entities to funnel money to his wife) and ¶ 60 (noting that Digges entered into a settlement with the SEC in which he admitted to his ownership and control of Defendants' entities)).